The document below is hereby signed.

Signed: March 4, 2015



_/s/ S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re | ) |
| | ) |
| GEORGE W. CRAWFORD, | ) Case No. 13-00759 |
| | ) (Chapter 7) |
| Debtor. | ) |
| | ) **Not for Publication in West's** |
| | ) **Bankruptcy Reporter.** |

MEMORANDUM DECISION OVERRULING DEBTOR'S
OBJECTION TO CLAIM OF FIRST WASHINGTON INSURANCE COMPANY

The debtor, George W. Crawford, filed an objection to the trustee's proposed final report on the basis that he contests the claim of First Washington Insurance Company. This court construes this (as it did in an order entered January 26, 2015) as an objection substantively to the proof of claim filed by First Washington in the amount of $1,499,161.28, which is comprised of a D.C. Superior Court judgment in the amount of $1,158,701.40; sanctions awards entered in the Superior Court; and unpaid interest owed on the judgment and sanctions award. First Washington has filed an Opposition.

The basis for Crawford's objection is two-fold.  First, he asserts that the $1,158,701.40 judgment was reduced to $10,000 by a settlement, and that First Washington should be prevented from enforcing the judgment by operation of the doctrine of collateral estoppel.  Second, he appears to assert that the most recent sanctions award entered against him by the Superior Court (in the amount of $72,788.08) should be disallowed because the award is subject to a Rule 59 motion to alter or amend, which is still pending in the Superior Court after being stayed by his bankruptcy filing.  Both arguments are erroneous, and the objection must be overruled.

I

On August 23, 2007, First Washington and others, as plaintiffs, filed a complaint in the D.C. Superior Court against Crawford and others (Case No. 2007 CA 005890 B), alleging, *inter alia*, breach of certain promissory notes, deeds of trust, and personal guarantees.  The claims against Crawford arose from his personal guaranty of the promissory notes.  On December 1, 2009, the Superior Court entered a judgment in favor of the plaintiffs and against Crawford in the aggregate amount of $1,158,701.40.  On January 14, 2010, the plaintiffs filed a "Praecipe of Partial Settlement" with the Superior Court.  The praecipe provided, among other things, that the plaintiffs had agreed to release Crawford from the judgment subject to specified terms and

conditions:

> Mr. Crawford shall pay Plaintiffs $10,000 over three years ($3,333 by January 15, 2011; $3,333 by January 15, 2012; and $3,334 by January 15, 2013) and provide Plaintiffs with a sworn Affidavit detailing all his assets and liabilities. To secure Mr. Crawford's obligation, Mr. Crawford will enter into a Promissory Note with Plaintiffs which provides for, inter alia, acceleration and Plaintiffs' attorneys' fees and costs if they are required to enforce it. **Upon Mr. Crawford's execution of the Affidavit and Promissory Note, Plaintiffs will release Mr. Crawford from the Judgment entered against him** (emphasis added).

Crawford did not execute an affidavit or a promissory note that satisfied the requirements specified in the praecipe, nor did he pay the $10,000 amount of the proposed promissory note. On March 1, 2010, the plaintiffs filed a motion to enforce the settlement in Superior Court. On March 15, 2010, Crawford filed a motion to vacate the judgment. On May 28, 2010, the Superior Court conducted a hearing on both motions. Opposition Exh. F (hearing transcript). Ruling orally, the Superior Court granted First Washington's motion to enforce the settlement. *Id.* at 12, 52, 55. In addition, the court held that Crawford's Motion to Vacate Judgment was "meritless" (*id.* at 49-50), "frivolous" (*id.* at 51), and merited the imposition of sanctions (*id.* at 51, 53). As a result, the Superior Court denied Crawford's Motion to Vacate Judgment, leaving the judgment unaffected, and directed that Crawford execute the affidavit and promissory note within a week. *Id.* at 57-58, 60. The court further ordered Crawford to execute those documents as a condition precedent to any action by

the plaintiffs to release the judgment:

> [Y]ou will execute the materials first before anyone else executes any documents releasing or dismissing anything, all right.  Execute the documents, get them to Mr. Neal and I am confident that Mr. Neal will comply with his obligation to execute whatever is necessary including the appropriate motion vacating the judgment, all right.

*Id.* at 60.  The court further warned Crawford that if he failed to execute the settlement documents within a week, the court would impose sanctions against Crawford for this failure to act. *Id.* at 57-58.  The court also ruled that it would award sanctions against Crawford to compensate First Washington for having to respond to Crawford's frivolous and meritless Motion to Vacate Judgment.  *Id.* at 51-53.  Crawford did not execute the promissory note and affidavit.  On August 23, 2010, Crawford sued the plaintiffs (Superior Court Case No. 2010 CA 6309 B) for, *inter alia*, abuse of judicial process based on the plaintiffs' having sued and obtained the judgment against Crawford.

Almost two years later, on May 31, 2012, the Superior Court issued an Omnibus Order addressing the judgment, Crawford's lawsuit, the status of the settlement between First Washington and Crawford, and other matters.  Opposition Exh. H (Omnibus Order).  In the Omnibus Order, the Superior Court:

> (a) again ordered Crawford to execute no later than June 29, 2012, at 12:00 noon a promissory note and affidavit that satisfied the requirements of the settlement;
>
> (b) directed that if Crawford failed to comply "with this clear and unambiguous Order, he shall be required to

show cause why he should not be held in contempt of Court";

(c) awarded the sum of $18,787.00 to First Washington and $11,730.35 to another plaintiff, First American Title Insurance Co., as sanctions against Crawford for his failure to perform his obligations under the settlement and for filing "a frivolous Motion to Vacate Judgment";

(d) modified the judgment against certain other defendants, but left it intact as to Crawford (and others);

(e) denied with prejudice a motion filed by Crawford for Rule 11 sanctions against the plaintiffs and their counsel as a "resurrection of the same baseless claims" upon which Crawford had based his March 15, 2010, Motion to Vacate Judgment;

(f) awarded sanctions to First Washington for having had to respond to Crawford's Rule 11 motion; and

(g) consolidated Crawford's lawsuit with the plaintiffs' civil action.

On June 8, 2012, the Superior Court entered an amended order of judgment against Crawford and others. Opposition Exh. I (amended judgment). The amended judgment reduced the amount of the judgment against other persons but, as to Crawford, repeated his liability as under the original judgment, reflecting that the original judgment was still in full force and effect notwithstanding the unperformed settlement described in the praecipe roughly two and one half years before.

On August 17, 2012, the Superior Court held a hearing on Crawford's noncompliance with the court's May 31, 2012, Omnibus Order. Opposition Exh. J (hearing transcript). At the hearing,

5

Crawford disclosed that he had still not signed a promissory note as required by the Omnibus Order. *Id.* at 7, 10-11. Crawford also acknowledged that he had not paid the sanctions imposed under the Omnibus Order. *Id.* at 9, 19. Upon learning of the foregoing, the Superior Court found Crawford in contempt for his failure to comply with the Omnibus Order. *Id.* at 41-42. The court then observed that it would not issue a written order (*id.* at 43), but warned Crawford that, if he failed to purge his contempt by paying the sanctions, he faced incarceration (*id.* at 44-45).

On September 19, 2012, the Superior Court held yet another hearing on Crawford's noncompliance with its orders. Opposition Exh. K (hearing transcript). Crawford again conceded that he had not signed a promissory note as required by the settlement. *Id.* at 14-19, 26. The court also found that Crawford still had not executed an affidavit that complied with its orders. *Id.* at 54-56. Given Crawford's refusal to comply with its prior orders, the Superior Court observed that the settlement was void and stated that it would order Crawford (pending submission of a written order from the plaintiffs) to execute an affidavit as to his assets in order to facilitate the collection of the amended judgment against Crawford. *Id.* at 61-63. The court warned Crawford that his failure to obey that new order would result in incarceration and that he also still needed to pay the previously

imposed sanctions. *Id.* at 62, 64.

On October 3, 2012, the court issued an order pursuant to the September 19 hearing, listing the financial information that Crawford was required to produce in order to facilitate execution of the judgment. On November 5, 2012, the court re-issued the order because of an intervening appeal which had been noted by Crawford on September 19, 2012, and rejected by the D.C. Court of Appeals on October 18, 2012. *See* Exh. 7 to Crawford Objection (order dated Nov. 27, 2012, explaining orders of Oct. 3 and Nov. 5, 2012). Crawford then filed a motion for clarification regarding those orders, and on November 27, 2012, the Superior Court issued an order denying his motion and finding it to be a "blatant attempt to avoid the judgment of December 2009" and "the most recent in a string of stalling tactics aimed at avoiding the judgment." *Id.*

On December 5, 2012, the Superior Court held another hearing on Crawford's noncompliance with its orders. Opposition Exh. L (hearing transcript). At that hearing, in response to a question from Crawford regarding the settlement, the court explained the status of the amended judgment:

> But Mr. Crawford, the judgment never went away. The judgment – terminating the judgment was predicated on you satisfying the conditions of the settlement agreement that you reached with the plaintiffs. You never satisfied that, so they never discharged the judgment.

*Id.* at 51. When Crawford insisted he could not have complied

with the court's prior orders directing his execution of a promissory note under the settlement, the court responded, "There's no settlement." *Id.* at 52.

On December 10, 2012, the Superior Court held another hearing on Crawford's noncompliance with its orders. Upon learning that Crawford had not, among other things, paid the sanctions previously awarded to the plaintiffs, the court ordered that Crawford be conditionally incarcerated and set bond at $30,517.35 (the combined total of the sanctions awarded to First Washington and FATIC by the Omnibus Order of May 31, 2012).[1] Opposition Exh. M (Memorandum Opinion and Order entered Dec. 14, 2012, pursuant to Dec. 10 hearing). Also on December 14, 2012, the Superior Court entered an order wherein it awarded First Washington an additional amount of $99,667.00 in attorney's fees sanctions. Exh. 8 to Crawford's Objection.

The Superior Court conducted several additional hearings regarding Crawford's contempt of court. At a December 19, 2012, hearing, the Superior Court expressed its bafflement as to why Crawford had not taken advantage of the settlement and noted that

---

[1] The amount that had been awarded to First Washington was $18,787.00. Crawford claims he paid this award (see Crawford's Objection, at 4, and Exh. 11 to Crawford's Objection), and First Washington did not dispute this in its Opposition. Indeed, First Washington claims in another filing that it took Crawford's payments into account in its proof of claim. *See Response to the Court's Order of January 26, 2015*, filed by First Washington, Jan. 28, 2015 (Dkt. No. 143), at 2 n.1.

8

Crawford was still facing the amended judgment of over $1,000,000. Opposition Exh. N, at 13-14 (hearing transcript). On January 17, 2013, the court observed that Crawford had "flat-out reneged on the settlement" and that the amended judgment against Crawford "still has full force and effect." Opposition Exh. O, at 9-10 (hearing transcript). At a March 18, 2013, hearing, the court observed that because Crawford had not satisfied the settlement, he still had a "$1,000,000 plus" judgment against him, which the plaintiffs had the right to enforce. Opposition Exh. P, at 22 (hearing transcript).

On November 20, 2013, the Superior Court awarded First Washington an additional $72,788.08 in attorney's fees sanctions. Exh. 9 to Crawford's Objection. On November 22, 2013, Crawford filed a Motion to Alter or Amend that sanctions award. Exh. 10 to Crawford's Objection. Crawford's motion could not be ruled upon because the filing of his bankruptcy petition stayed the Superior Court proceedings.

II

The foregoing factual summary reflects that Crawford's contention that the judgment was reduced to $10,000 by virtue of the settlement is incorrect. To the extent a settlement was reached, the settlement praecipe specifically states that Crawford's execution of a promissory note and affidavit was a condition precedent to First Washington's obligation to release

Crawford from the amended judgment.  *See Wash. Properties, Inc. v. Chin, Inc.*, 760 A.2d 546, 549 (D.C. 2000).  The Superior Court repeatedly found that Crawford never executed the promissory note and affidavit required by the settlement; therefore, any contractual obligation of First Washington to release Crawford from the amended judgment never arose.

The foregoing summary of events further reflects beyond any doubt that the amended judgment was a valid and existing debt of Crawford's as of the commencement of this bankruptcy case.  It was never vacated by the Superior Court or released by First Washington.  To the extent Crawford's Objection is a challenge to the validity and enforceability of the amended judgment, this Court lacks jurisdiction to address the challenge in light of the *Rooker-Feldman* doctrine.  *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-84 (2005).

Crawford's raising of the doctrine of collateral estoppel (issue preclusion) works against him.  "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.  This effect also is referred to as direct or collateral estoppel." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984), *cited in Durkin v. Shields*, No. 92-1003-IEG, 1997 WL 808651, at *8-9 (S.D. Cal. June 5, 1997).  "An issue actually litigated and necessarily determined by a court may not be relitigated in a

suit on a different cause of action involving a party to the previous litigation." *Durkin*, 1997 WL 808651, at *9. For issue preclusion to apply,

> [1] the same issue now raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2] the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and 3] preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007), quoting *Yamaha Corp. of Amer. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

Applying this standard, Crawford is precluded from arguing that the praecipe of settlement displaces the judgment or amended judgment. In the Superior Court, *after* the praecipe of settlement was filed, Crawford filed a Motion to Vacate Judgment, which was *denied* by the court during a May 28, 2010, hearing. Opposition Exh. F (hearing transcript), at 49-51. Crawford argued at the hearing that the judgment must be vacated concurrently with his execution of the requisite promissory note and affidavit. *Id.* at 59-60. The court disagreed, ruling that Crawford had to execute the promissory note and affidavit as a condition precedent to any action by the plaintiffs to vacate the judgment:

> [Y]ou will execute the materials first before anyone else executes any documents releasing or dismissing anything, all right. Execute the documents, get them to Mr. Neal and I am confident that Mr. Neal will comply with his

11

>obligation to execute whatever is necessary including the appropriate motion vacating the judgment, all right.

*Id.* at 60. Crawford never executed the promissory note and affidavit, and the judgment was never vacated. This court thus easily concludes that the issue of whether the praecipe of settlement, without satisfaction of the condition precedent, somehow vitiates the judgment against Crawford, is an issue that was contested by the parties in the Superior Court proceedings and was actually and necessarily decided by a court of competent jurisdiction. In addition, precluding Crawford from re-litigating this issue will not work a basic unfairness to him because he has had ample opportunity, as is evidenced by the factual summary above, to argue his case repeatedly before the Superior Court.

To the extent that Crawford is attempting in his Objection to invoke the doctrine of judicial, not collateral, estoppel, such attempt would likewise fail. Judicial estoppel precludes a party from taking a position in a case that is contrary to a position it has taken in earlier legal proceedings. *Zedner v. United States*, 547 U.S. 489, 504 (2006). For this doctrine to apply, however, the later position must be "clearly inconsistent" with the party's earlier position. *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Here, First Washington's current position is that the judgment against Crawford (as amended) still exists because it was never vacated, and that

12

First Washington was not required to vacate the judgment because Crawford never fulfilled the condition precedent to its so doing (*i.e.*, he never executed the requisite promissory note and affidavit). Crawford does not articulate how this position is inconsistent with First Washington's prior attempts to compel Crawford to execute the promissory note and affidavit, and I find that such attempts, when unsuccessful, were not inconsistent with First Washington's subsequent efforts to enforce the still-existing judgment.[2] Crawford's objection to the principal judgment (in the amount of $1,158,701.40) in First Washington's proof of claim must be overruled.

### III

Crawford also appears to take the position that the most recent sanctions award imposed by the Superior Court (in the amount of $72,788.08) should be disallowed because that judgment for sanctions is subject to a Rule 59 motion to alter or amend, still pending in Superior Court after being stayed by his bankruptcy filing. Crawford raises no cogent argument about the sanctions award but merely (a) recites that he filed a motion to alter or amend that sanctions judgment, and (b) omits that sanctions award from his rudimentary calculation of what First

---

[2] Indeed, if the opposing argument were carried to its logical end, then any successful litigant who engages in post-judgment settlement negotiations might be later found to be estopped from enforcing its judgment when settlement negotiations are unsuccessful. This would be an absurdity.

Washington's claim ought to be.[3]  However, the mere pendency of a motion to alter or amend does not deprive the judgment of *res judicata* effect.  *See Jones v. Holland (In re Holland)*, 2014 WL 4495162, at *8 (Bankr. D.D.C. Sept. 12, 2014).  This is true even though the overruling of Crawford's objection on the basis of the *res judicata* effect of the Superior Court judgment could be subject to revision at a later date under Rule 60 if Crawford were to successfully pursue his Rule 59 motion in the Superior Court (or were to successfully pursue an appeal).  Crawford presents no argument or case law to the contrary.  Therefore, any objection of his as to the sanctions award (in the amount of $72,788.08) must be overruled.

---

[3]  Crawford asserts that First Washington's claim ought to comprise the following:

```
   $10,000.00 (settlement amount)
 + $18,787.00 (May 31, 2012, sanctions award)
 + $99,667.00 (Dec. 14, 2012, sanctions award)
 = $128,454.00.
```

He then subtracts payments made by him:

```
    $2,000.00 (towards the settlement)
 + $18,787.00 (towards sanctions)
 + $17,500.00 (towards sanctions)
 =  $38,287.00 in total payments.
```

His calculation would result in a net total claim of $90,187.00.  He does not assert that First Washington failed to give him credit for the $38,287.00 in payments.  Instead, he asserts that the principal judgment should be reduced to $10,000 and the sanctions award of $72,788.08 should be disallowed, resulting in a need to recompute the amount owed.

IV

First Washington included as part of its proof of claim unpaid interest that had accrued on the $1,158,701.40 judgment and the sanctions awards it obtained in the Superior Court.[4] Crawford did not include unpaid interest in his calculation of what First Washington's claim ought to be, but he did not contend

---

[4] Unpaid interest would have totaled $187,504.80 if payments were applied first to principal, and would have totaled somewhat more if payments were applied first to unpaid interest. First Washington did not provide a clear picture in its proof of claim regarding interest. However, given the figures that were provided, First Washington's proof of claim would appear to break down as follows before including the effects of interest that accrued:

```
  $1,158,701.40 (substantive judgment)
+    $18,787.00 (May 31, 2012, sanctions award)
+    $99,667.00 (Dec. 14, 2012, sanctions award)
+    $72,788.08 (Nov. 20, 2013, sanctions award)
-    $38,287.00 (Crawford payments)
= $1,311,656.48.
```

The total amount of First Washington's proof of claim is $1,499,161.28. Comparison of this total with the figures above forces the conclusion that First Washington's claim for post-judgment interest is:

```
  $1,499,161.28
- $1,311,656.48
=   $187,504.80
```

if payments were first applied to principal. (Necessarily, if payments were applied first to interest, the amount of unpaid principal included in the $1,499,161.28 amount on the proof of claim would be more and the amount of unpaid interest included in that $1,499,161.28 amount would be less.) Because the $1,158,701.40 judgment was entered in December 2009, and Crawford's bankruptcy petition was filed in December 2013, the $187,504.80 figure would represent interest of roughly 4% per annum on the $1,158,701.40 judgment alone.

that, if the underlying judgment and sanctions awards survive his objection, the interest included in First Washington's proof of claim was in error. While the amortization table attached to First Washington's proof of claim does not make sense, First Washington is clearly entitled to recover unpaid interest owed as of the petition date. Because Crawford failed to contest the unpaid interest included in First Washington's proof of claim, First Washington's claim for interest survives.

V

An order follows overruling George W. Crawford's objection to First Washington Insurance Company's claim (Dkt. No. 138).

[Signed and dated above.]

Copies to: Recipients of e-notification of orders;

George W. Crawford
2302 First Street, NW
Washington, DC 20001